In the

# United States Court of Appeals
### For the Seventh Circuit

No. 08-2197

BRIAN FRENCH, DAVID FRENCH, JEANNA
FRENCH and PAULA FRENCH VAN AKKEREN,

*Plaintiffs-Appellees*,

*v.*

WACHOVIA BANK,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:06-cv-00869-RTR—**Rudolph T. Randa**, *Chief Judge*.

ARGUED MAY 14, 2009—DECIDED JULY 31, 2009

Before RIPPLE, MANION and TINDER, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Brian French, David French,
Jeanna French and Paula French Van Akkeren ("the
French beneficiaries") are beneficiaries of the French
family trust ("Trust"), which their father set up in 1991.
In 2006, the French beneficiaries filed a two-count com-
plaint against the trustee, Wachovia Bank ("the Bank").
Upon motion of the Bank, the district court concluded

that Count I of the complaint was not arbitrable, but that Count II was arbitrable; it therefore stayed litigation of Count I and ordered the parties to arbitrate Count II. The French beneficiaries then filed a motion to amend their complaint to eliminate Count II. The court granted the motion and then lifted the stay of litigation on Count I.

The Bank received a communication from the French beneficiaries that led it to believe that the beneficiaries had not abandoned definitively future litigation on Count II; the Bank therefore renewed its motion to compel arbitration. The district court denied that motion. The Bank now appeals that denial.

We conclude that we have jurisdiction over the appeal and hold that the district court correctly denied the motion to compel arbitration because there was no arbitrable claim in the operative complaint. Accordingly, we affirm the decision of the district court.

# I

## BACKGROUND

The French beneficiaries originally filed a two-count complaint against the Bank in a Wisconsin state court. In Count I, they alleged that the Bank had breached its duties as trustee; in Count II, they alleged that the Bank, or its affiliates, had provided false or misleading information about the replacement of several life insurance policies. The Bank removed the case to the United States District Court for the Eastern District of Wisconsin, on the basis of diversity jurisdiction. It then

filed a motion to stay further proceedings under section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3,[1] and to compel arbitration of the claim under section 4 of the FAA, 9 U.S.C. § 4.[2] On March 21, 2007, the district court determined that Count I was not covered by the operative arbitration agreement between the Bank and its affiliates; Count II, ruled the court, was subject to the

---

[1]   Section 3 of the FAA states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is refer-able to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitra-tion.

9 U.S.C. § 3.

[2]   Section 4 of the FAA states, in part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitra-tion proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

arbitration agreement. The court therefore stayed the proceedings under Count I and ordered the parties to arbitrate Count II. Neither party initiated arbitration proceedings on Count II.

The French beneficiaries then sought leave to amend their complaint to eliminate Count II;[3] they also asked that the court lift the stay of proceedings under Count I, the only count remaining in the amended complaint. The court permitted the amendment and, on October 23, 2007, lifted the stay, thus permitting litigation of Count I to proceed.

On December 4, the Bank sent an e-mail to the French beneficiaries. The e-mail stated that the Bank understood that the French beneficiaries had abandoned and waived the claim previously asserted in Count II of the original complaint when they filed an amended complaint excluding that claim and proceeded with litigation on the amended complaint without first arbitrating Count II. The French beneficiaries replied that it was "unclear" how the Bank could have concluded that the French beneficiaries had waived or abandoned any claims. R.38, Ex. B.

As a result of this exchange, on December 21, the Bank renewed its motion to compel arbitration of Count II and to stay the litigation of Count I until the completion of arbitration. The Bank claimed that the French beneficiaries previously had represented to the Court that

---

[3] *See* Fed. R. Civ. P. § 15(a)(2).

their claims under Count II had been abandoned, and it argued that the December 4 e-mail undermined this position. R.38 at 4.

On April 23, 2007, the district court denied the Bank's motion. The court held that the only claim before it was Count I of the amended complaint. It reasoned that the mere assertion in an e-mail that a party has not abandoned a claim and therefore might attempt to assert that claim at some future time does not place that claim before the court. The district court held that the Bank had the burden of establishing that the French beneficiaries planned to reassert the claim in Count II of the original complaint, a burden that it failed to carry simply by producing the e-mail.

## II

## DISCUSSION

### A.

We first must determine whether we have jurisdiction over this appeal. "Ordinarily, courts of appeals have jurisdiction only over 'final decisions' of district courts." *Arthur Andersen, LLP v. Carlisle,* 129 S. Ct. 1896, 1900 (2009) (quoting 28 U.S.C. § 1291). Our jurisdiction over interlocutory appeals involving arbitration is provided by an explicit statutory exception to that general rule. *Id.* Section 16(a)(1) of the FAA provides, among other things, that an appeal may be taken from an order "refusing a stay of any action under section 3 of this title" or "denying a petition under section 4 of this title to order arbitration to proceed." 9 U.S.C. §§ 16(a)(1)(A) & (B).

The French beneficiaries submit that we do not have appellate jurisdiction because the Bank failed to appeal, within thirty days, the district court's October 23, 2007 order lifting the stay of litigation of Count I. They observe that, in *Erb v. Alliance Capital Management, LP,* 423 F.3d 647, 650 (7th Cir. 2005), we held that, under Federal Rule of Appellate Procedure 4(a)(1)(A),[4] a party appealing an interlocutory order may not file a new motion and appeal from the order denying the second motion "[u]nless the circumstances have changed significantly since the entry of the original order." *Id.* The French beneficiaries contend that the exchange of e-mails in December 2007 did not constitute such a change in circumstances. Therefore, in their view, the Bank's appeal from the court's April 23, 2008 order denying the Bank's renewed motion is time-barred.

We do not believe that this case is controlled by *Erb*. In that case, the defendant removed an action to federal court. The district court issued a clear order remanding the case back to state court. The defendant once more removed the case to federal court. The district court again remanded the case to the state court. Then, the defendant sought to appeal the second remand order. *Erb,* 423 F.3d at 649-50. We viewed the defendant's second removal and its subsequent appeal of the district court's predictable

---

[4] This rule states that, except as provided in subsections not applicable in this case, "the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after the judgment or order appealed from is entered." Fed. R. App. 4(a)(1)(A).

remand order to be nothing more than an attempt to circumvent the Rule 4(a)(1)(A) time restriction applicable to the appeal of the first removal order. We therefore held that, in the absence of significant changes in the interim, we would consider such a second appeal to be an attempt to appeal the original order. *Id.* at 652-53. We refused to allow a subterfuge designed to avoid a time restriction mandated by Rule 4(a)(1)(A).

By contrast, here there was, at least arguably, some ambiguity in the litigation situation at the time of the district court's October 23 order. Earlier, the court had stayed litigation of Count I pending arbitration of Count II and had ordered the parties to engage in arbitration of Count II. On October 23, the court granted the French beneficiaries' motion to file an amended complaint that contained only Count I and to lift the stay on Count I. No action was specifically requested or taken with respect to the earlier order compelling arbitration of Count II. Consequently, although it was evident that the parties could now litigate Count I, the status of Count II was unclear. *Cf. Volkswagen of Am. v. Sud's of Peoria*, 474 F.3d 966, 971 (7th Cir. 2007) (noting that the FAA contemplates that a court might permit a nonarbitrable claim to proceed while an arbitrable claim is stayed pending arbitration).

The Bank apparently feared that the French beneficiaries would later seek to litigate the arbitrable claim in Count II. The Bank's e-mail to the French beneficiaries, in effect, asked for clarification of their intentions with respect to Count II. The French beneficiaries answered

in a manner that caused the Bank to suspect that they planned to reassert Count II in the future. The district court's order of April 23, 2008 substantially clarified the situation. The court confirmed that the allegations of Count II were no longer in the case by reaffirming its decision to lift the stay of proceedings under Count I *and* explicitly denying the Bank's motion to compel arbitration on Count II.

Our colleague in the district court saw no manipulative design in the Bank's renewal of its motion. Nor, on the cold record before us, can we come to such a conclusion. Under these circumstances, we must assume the good faith of the Bank and its counsel. Therefore, because the April 23 order denied—definitively—the benefit of arbitration on Count II, an interlocutory appeal from this order was appropriate under section 16(a)(1) of the FAA. *See Oblix, Inc. v. Winiecki*, 374 F.3d 488, 489 (7th Cir. 2004) (noting that "9 U.S.C. § 16(a)(1) allows an interlocutory appeal from a decision denying a party the benefit of arbitration"). We therefore have jurisdiction over the Bank's appeal.[5]

---

[5] The Supreme Court recently has made clear that, in determining our jurisdiction to hear an appeal under section 16 of the FAA, we must be careful not to conflate our estimation of the merits of the appeal with the jurisdictional analysis. *See Arthur Andersen, LLP v. Carlisle*, 129 S. Ct. 1896, 1900-01 (2009) (rejecting explicitly a "look-through" to the substantive provisions of section 3 when determining jurisdiction over the appeal). Consequently, in our analysis of our appellate juris-

(continued...)

**B.**

We now consider whether the district court erred in declining to stay litigation of Count I and refusing to compel arbitration of Count II. We review a district court's denial of a motion to stay litigation of nonarbitrable claims pending resolution of arbitrable claims for abuse of discretion, *Volkswagen of Am.*, 474 F.3d at 972, and we review de novo a district court's denial of a motion to compel arbitration, *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004).

The FAA provides "that a written provision in any contract evidencing an intent to settle by arbitration any future controversy arising out of such contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 556 (7th Cir. 2003) (quoting 9 U.S.C. § 2). The Supreme Court has noted that the FAA's purpose is "'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.'" *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89 (2000) (alteration in original) (quoting *Gilmer v. Interstate/Johnson Lane*

---

[5] (...continued)
diction in this case, we have been careful not to rely on our estimation of the merits of the Bank's position. For purposes of appellate jurisdiction, it suffices to say that the Bank's action was not manipulative. We shall address the merits of that position in the next section of the opinion.

*Corp.*, 500 U.S. 20, 24 (1991)). *See also Volkswagen of Am.*, 474 F.3d at 970 (noting that the FAA was enacted to reverse the common law trend of judicial hostility to arbitration).

The parties do not dispute that Count II in the French beneficiaries' original complaint was arbitrable under the FAA. The Bank submits, however, that after the French beneficiaries amended their complaint to exclude Count II, the claim contained in that count remained viable and arbitrable. It therefore contends that the district court was required to stay arbitration of Count I and to compel arbitration of Count II. In the Bank's view, the district court's acceptance of the second amended complaint amounted to a dismissal without prejudice of the original Count II. Consequently, the French beneficiaries could have refiled Count II after litigating Count I. Although the French beneficiaries would be required to arbitrate Count II in the event that they reasserted it, the Bank maintains that the arbitrator could be precluded by the district court's factual findings for Count I or that the result from the arbitration could be inconsistent with the federal court's disposition.[6]

---

[6] *See Volkswagen of Am. v. Sud's of Peoria,* 474 F.3d 966, 972 (7th Cir. 2007) (holding that, when a district court determines whether to stay arbitrable issues while allowing litigation of nonarbitrable issues to proceed, the court should consider "the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays" (citation and quotation marks omitted)).

Our colleague, Judge Ann Claire Williams, had occasion to address an analogous situation during her tenure as a district judge. In *Prudential Securities, Inc. v. Vitek*, No. 92 C 3137, 1993 WL 34699, at *1 (N.D. Ill. Feb. 8, 1993), the Viteks had joined ongoing litigation against Prudential, but later withdrew from the lawsuit after Prudential filed a motion to compel arbitration of the sole claim in the case. Judge Williams denied Prudential's motion to compel arbitration of the Viteks' claim; she held that, because the Viteks voluntarily had dismissed their suit, there was no live controversy for the parties to arbitrate. She further noted that the Viteks were not required to abandon completely the issues raised in the action to avoid arbitration. Judge Williams also concluded that Prudential had not established a reasonable basis for its belief that the Viteks would litigate the issues in the future. *Id.* at *3.

The reasoning of *Prudential Securities* points the way for us today. As the district court observed, after it ruled on the French beneficiaries' request to amend its complaint, there was only one operative complaint before the court. *See Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) ("[W]hen a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward."); *see also* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1476 at 556 et seq. (3d ed. 1990). That complaint did not contain an arbitrable claim. There was, therefore, no claim

to send to arbitration.[7]

As Judge Williams pointed out in *Vitek,* the matter of the consequences for dismissing an arbitrable claim and proceeding with the nonarbitrable claims is a matter best resolved when—and if—the dismissing party ever attempts at a later date to bring those claims again. In that posture, a court will be able to best determine whether the doctrines of waiver or estoppel ought to prevent such an attempt.

Because the district court correctly determined that the operative complaint contained no arbitrable claim, it correctly denied the motion to compel arbitration and correctly lifted the stay of Count I, a nonarbitrable claim.

---

[7] We cannot agree with the Bank's assertion that the French beneficiaries' statement that they had not waived or abandoned any claims indicated that they planned to refile Count II after litigation in the district court concluded. As the court noted in *Prudential Securities Inc. v. Vitek*, No. 92 C 3137, 1993 WL 34699, at *3 (N.D. Ill. Feb. 8, 1993), the plaintiffs "should not be required to represent that they have completely abandoned the issues" embodied in Count II "in order to not be required to submit to arbitration." *Id.*

## Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED